# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SHANNIKA BAXTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) 1:21-cv-376 |
| VOLUNTEERS OF AMERICA | ) |
| SOUTHEAST, INC., | ) JURY DEMANDED |
| | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** Plaintiff, Shannika Baxter ("Ms. Baxter" or "Plaintiff"), by and through her undersigned counsel, and files this Complaint against Defendant, Volunteers of America Southeast, Inc. ("VOASE" or "Defendant"). As grounds for this Complaint, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure protection of and to redress the deprivation of rights secured by the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. § 12101 et seq. (the "ADA").

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The venue of this action is properly placed in the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims accrued in Dale County, Alabama.

1

## ADMINISTRATIVE EXHAUSTION

4.  Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") on or about March 20, 2020. (Attached hereto as Exhibit "A"). Charge number 420-2020-01737 (the "Charge"), alleged that Defendant subjected her to discrimination and disparate terms and conditions of employment because her disability, in violation of the ADA.

5.  Plaintiff also alleged that Defendant terminated her shortly after she requested reasonable accommodations for her disability in the form of work restrictions.

6.  On or about January 20, 2021, the EEOC found "reasonable cause to conclude that more likely than not Respondent discriminated against Charging Party as alleged by failing to engage Charging Party in the interactive process for reasonable accommodations, and discharged Charging Party because of her disability, in violation of the ADA, as amended." (Attached hereto as Exhibit "B").

7.  After the EEOC's efforts to conciliate the Charge were unsuccessful, it issued a Notice of Suit Rights with respect to the Charge on February 19, 2021.

8.  Plaintiff received the Notice of Suit Rights on February 22, 2021. (Attached hereto as Exhibit "C").

9.  Plaintiff has now filed her Complaint within ninety (90) days of receipt of the Notice of Suit Rights.

10. Plaintiff has thus exhausted all administrative remedies with respect to the Charge prior to filing the Complaint.

## PARTIES

11. Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, and is a resident of Dale County, Alabama.

12. Plaintiff has a qualifying disability under the ADA in that she has physical and/or mental impairments which substantially limits one (1) or more of her major life activities; Defendant was aware of Plaintiff's disability. Defendant also perceived Plaintiff as being an individual with a disability which substantially limits major life activities, pursuant to 42 U.S.C. §12102(1).

13. Plaintiff is a qualified individual under the ADA in that she could perform the essential functions of her employment, with or without reasonable accommodations, pursuant to 42 U.S.C. § 12111(8).

14. Defendant is an affiliate of Volunteers of America, a national non-profit organization that operates residential programs for people with mental and/or physical disabilities.

15. Defendant operates a facility in Ozark, Alabama, the address of which is 1107 Harris Road, Ozark, Alabama, 36360.

16. Defendant is an employer as defined by the ADA.

17. Defendant is an "employer" per 42 U.S.C. § 12111(5) in that it engages in commerce or any industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

18. Defendant was Plaintiff's employer at all times relevant to this Complaint, and all of Plaintiff's claims accrued in Dale County, Alabama.

## **FACTUAL ALLEGATIONS**

19. On or about June 25, 2019, Defendant hired Plaintiff to work as a Direct Support Professional ("DSP") in Defendant's community home located in Ozark, Alabama.

20. The DSP position "is responsible for guiding, coaching and encouraging individuals to achieve their maximum level of independence."

21. The requirements for the DSP position are as follows:

   a. The ability to collaborate;

   b. The ability to assist individuals in achieving personal goals;

   c. The ability to communicate with individuals by listening and learning;

   d. The ability to establish rapport with individuals, family members, friends, and other natural supports;

   e. Must possess a high level of written communication skills;

  f. Must possess a valid Alabama driver's license;

  g. The ability to meet the requirements of Volunteers of America's vehicle insurance carrier, if appliable; and

  h. The ability to pass all required training courses.

22. The job description also included a list of fifteen (15) "principal activities", which Plaintiff was able to complete throughout her employment with Defendant.

23. From the start of her employment, Plaintiff reported to the Regional Director, Betty Ford ("Ms. Ford").

24. Plaintiff was and is qualified for the DSP position.

25. Plaintiff was and is able to perform the essential functions of her job, and satisfactorily did so until Defendant terminated her employment.

26. In or around December 2019, Plaintiff sought medical treatment for pain and swelling she was experiencing in her left arm.

27. Plaintiff believed she suffered from Carpal Tunnel, informed Ms. Ford of the same, and that she needed to take leave to receive medical testing.

28. Plaintiff was under a physician's care from December 14-16, 2019, and was officially diagnosed with Rheumatoid Arthritis during that time.

29. Upon her diagnosis, Plaintiff's physician provided her with a Return-to-Work Notice, dated December 18, 2019, that included a request for reasonable

accommodation in the form of work restrictions, which permitted Plaintiff to perform the essential functions of her job.

30. Plaintiff's restrictions were "light duty only, no use of left arm."

31. On or about that same day, December 18, 2019, Plaintiff submitted the documentation to Ms. Ford.

32. After turning in the physician's note, Ms. Ford did not discuss Plaintiff's physician placed restrictions, need for accommodation, or disability with Plaintiff.

33. In fact, none of Defendant's employees discussed Plaintiff's physician placed restrictions, need for accommodation, or disability with her, despite their awareness of those restrictions.

34. While no one discussed Plaintiff's diagnosis or need for accommodation with her, Defendant's employees did discuss these things among themselves, to include their corporate legal counsel.

35. On December 19, 2019, Grayson Knight-Schemer ("Ms. Knight-Schemer"), Corporate Counsel, emailed Kim Garner ("Ms. Garner"), Human Resources Specialist, and Guy Carter, Human Resources, stating that Plaintiff had been diagnosed with Carpal Tunnel.

36. Ms. Knight-Schemer stated that Plaintiff had a "reasonable accommodation issue", and that she had previously instructed Ms. Ford to call Ms. Garner to discuss options for accommodations or light duty.

37. On December 19, 2019, Ms. Garner sent Ms. Ford an email asking if there were any available options for Plaintiff to work light duty.

38. **Ms. Ford responded that afternoon stating, "[w]e do not. Too much liability at state [sic]."**

39. On December 20, 2019, Ms. Garner emailed Ms. Ford and stated, "[w]e have decided to separate her employment due to her not being able to perform the physical duties of the job."

40. Ms. Ford terminated Plaintiff's employment that day via telephone.

41. Plaintiff also received a letter dated December 20, 2019, signed by Ms. Ford, stating that Defendant was terminating Plaintiff because of her disability.

42. Ms. Ford wrote, "you submitted a return to work notice from your physician stating that you were on light duty and could not use your left arm. Unfortunately there are no options for light duty in the Ozark home."

43. Notably, no one discussed what reasonable accommodation options Plaintiff sought or needed prior to her termination.

44. The termination letter also stated, "[i]n order to put you on the schedule, you would have to be cleared for full-duty without any restrictions."

45. Ms. Ford enclosed a copy of Plaintiff's job description and stated, "[s]ince you cannot perform these duties at this time, your employment will be separated effective December 20, 2019."

46. Defendant stated that Plaintiff could re-apply for employment once she was fully released without restrictions from her doctor.

47. **Notably, Plaintiff's job description states, "[r]easonable accommodation may be made to enable individuals with disabilities to perform the essential functions."**

48. Plaintiff could have performed the essential functions of her DSP duties with reasonable accommodation.

49. Defendant failed to provide Plaintiff with an opportunity to engage in an interactive discussion to identify any reasonable accommodations available.

50. Defendant violated the ADA by: (1) failing to engage in an interactive process with Plaintiff; (2) conclusively determining, without consulting Plaintiff, that there was no light duty or reasonable accommodation(s) available for Plaintiff; (3) deciding that granting Plaintiff a reasonable accommodation would have been a "liability" for the company; and (4) terminating Plaintiff's employment because it could not reasonably accommodate her.

51. But for Plaintiff's disability and requesting reasonable accommodation, Defendant would not have terminated Plaintiff's employment.

## **COUNT I – FAILURE TO ACCOMMODATE UNDER THE ADA**

52. Plaintiff re-alleges and incorporates by reference paragraphs four (4) through nine (9) and eighteen (18) through fifty (50) above with the same force and effect as if fully set forth herein.

53. Plaintiff is disabled within the meaning of the ADA.

54. Due to Rheumatoid Arthritis, Plaintiff was and is substantially limited with respect to one (1) or more major life activities; specifically, Plaintiff was limited with respect to lifting and working with her left arm.

55. Plaintiff was and is qualified for her position, with Defendant, with reasonable accommodations for her serious medical condition.

56. On or about December 18, 2019, Plaintiff submitted a physician's note to Ms. Ford, which included work restrictions of "light duty only, no use of left arm."

57. Following Plaintiff's submission of the physician's note, Defendant did not discuss any of the following with Plaintiff: her disability; her December 18, 2019 physician's note; her need for reasonable accommodation(s); what reasonable accommodation(s) were or were not available; or her ability to complete her job responsibilities.

58. Rather, two (2) days later, on or about December 20, 2019, Defendant terminated Plaintiff because it determined, without consulting Plaintiff, that it could not accommodate her physician order work restrictions.

59. As determined by the EEOC, Defendant violated Plaintiff's rights under the ADA by failing to engage in an interactive process with Plaintiff to discuss what reasonable accommodations she needed and what reasonable accommodations Defendant could offer Plaintiff.

60. Plaintiff suffered damages as a result of Defendant's actions in failing to engage in the interactive process with Plaintiff.

## COUNT II- DISABILITY DISCRIMINATION UNDER THE ADA

61. Plaintiff re-alleges and incorporates by reference paragraphs four (4) through nine (9) and eighteen (18) through fifty-one (51) above with the same force and effect as if fully set forth herein.

62. Plaintiff is disabled within the meaning of the ADA.

63. Due to Rheumatoid Arthritis, Plaintiff was and is substantially limited with respect to one (1) or more major life activities.

64. Specifically, Plaintiff was limited with respect to lifting and working with her left arm.

65. Plaintiff was and is qualified for her position with Defendant, with reasonable accommodation for her serious medical condition.

66. In or around December 2019, Plaintiff informed Defendant that she was disabled, as defined by the ADA.

67. Defendant had knowledge of Plaintiff's condition and her need for reasonable accommodation to avoid use of her left arm.

68. On or about December 18, 2019, Plaintiff submitted a physician's note, which stated that Plaintiff should work light duty and not use her right arm.

69. On or about December 19, 2019, Defendant's employees held internal discussions about Plaintiff's perceived Carpal Tunnel diagnosis.

70. As evidenced by the internal discussions, Defendant regarded Plaintiff as disabled, as defined by the ADA.

71. In discussing Plaintiff's disability internally, Defendant purported that it could not reasonably accommodate Plaintiff's work restrictions because doing so would have been a "liability" for the company.

72. Defendant terminated Plaintiff approximately two (2) days after she informed Defendant of her disability.

73. Defendant's termination letter, dated December 20, 2019, cites Plaintiff's disability as the reason for her termination.

74. But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

75. Plaintiff suffered damages as a result of Defendant's discrimination.

## **COUNT III- RETALIATION UNDER THE ADA**

76. Plaintiff re-alleges and incorporates by reference paragraphs four (4) through nine (9) and eighteen (18) through fifty-one (51) above with the same force and effect as if fully set forth herein.

77. Plaintiff is disabled within the meaning of the ADA.

78. Due to Rheumatoid Arthritis, Plaintiff was and is substantially limited with respect to one (1) or more major life activities.

79. Specifically, Plaintiff was limited with respect to lifting and working with her left arm.

80. Plaintiff was and is qualified for her position, with Defendant, with reasonable accommodation for her serious medical condition.

81. On or about December 18, 2019, Plaintiff engaged in statutorily protected conduct by requesting reasonable accommodations from Defendant.

82. As a request for reasonable accommodation, through her physician, Plaintiff requested light duty and no use of her left arm.

83. Without engaging in an interactive discussion, as required by the ADA, Defendant denied Plaintiff's request for reasonable accommodation, deeming Plaintiff a "liability" for the company.

84. Defendant terminated Plaintiff approximately two (2) days after she requested reasonable accommodation, on or about December 20, 2019.

85. In retaliation for Plaintiff engaging in statutorily protected conduct of requesting reasonable accommodation, Defendant subjected Plaintiff to unlawful employment action, including, but not limited to, termination.

86. Plaintiff suffered damages as a result of Defendant's retaliation.

WHEREFORE premises considered, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, consequential damages, incidental damages, the costs of this action, interest, attorney's fees, and any other, further, and different relief to which she may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

Joshua A. Wrady (ASB-9617-J68W)
Courtney B. Crampton (ASB-3685-J61X)
*Attorneys for Plaintiff*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Joshua@wmalabamalaw.com
Courtney@wmalabamalaw.com
Tel:  (205) 980-5704
Fax:  (205) 994-2819

**DEFENDANT TO BE SERVED BY PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Volunteers of America Southeast, Inc.
r/a Davis, Wallace T.
1204 Hillcrest Road
Mobile, Alabama 36695